FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   OCT 02 2017   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

POWER UP LENDING GROUP, LTD.                    Civil Action No.

                    Plaintiff,

    -against-

FBEC WORLDWIDE INC,

                Defendant.

-------------------------------------------------------------------------X

# CV-17 5749

**WEXLER, J.**
**LINDSAY, M.J.**

## COMPLAINT

Plaintiff, Power Up Lending Group, Ltd. ("Plaintiff") files this Complaint and alleges the following:

### I. SUMMARY

1. Plaintiff brings this action for equitable relief and damages caused by violations of the anti-fraud provisions of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5(b) thereunder by the defendant, FBEC Worldwide, Inc. ("Defendant"). Through this action, Plaintiff seeks to recover losses caused by the Defendant's intentional misconduct, including compensatory damages which may only be avoided if the equitable and injunctive relief described hereinbelow is granted.

2. That the Plaintiff was an investor in the Defendant and was well known to the Defendant. The Plaintiff's business strategy at the time of the stock purchases, loans and issuance of Notes at issue was to invest in publicly-traded, nano-cap companies whose securities are traded on the over-the-counter market sometimes referred to as the "pink sheets." Nano-cap companies like the Defendant are often capital constrained as their low market capitalization hinders their access to

banks or investment firms.  The Plaintiff provides capital to such companies as an investment in return for shares purchased at a discount to market price.

3.  That the Plaintiff invested $86,000 in the Defendant by purchasing securities directly from the same and making loans thereto and has sustained damages of $129,000 exclusive of attorneys' fees, pre-judgment interest, costs and late fees.

## II.  JURISDICTION AND VENUE

4.  This action arises under the anti-fraud provisions of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5, and the jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331 and Section 27 of the Exchange Act.  In addition, jurisdiction is invoked pursuant to 28 U.S.C. Section 1332 as there is complete diversity between the parties and more than $75,000 is at issue, exclusive of interest, costs and fees.

5.  Venue is proper in this Court pursuant to Section 27 of the Exchange Act and 28 U.S.C. Section 1391(b) because certain of the transactions, acts, practices and courses of conduct constituting violations of duties established by the Federal Securities Laws occurred within this judicial district.  Additionally, the Plaintiff transacts business and maintains its principal place of business in this district.  That further, the Defendant has contractually agreed with the Plaintiff to fix venue for any action in the State of New York, County of Nassau which is within the Eastern District and the jurisdiction of this Court.

6.  That in connection with the acts alleged in this Complaint, the Defendant directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

### III. PARTIES

7.  That at all times relevant herein, the Plaintiff has been and remains a corporation organized and existing under the laws of the State of Virginia with an office for business in the County of Nassau, not engaged in the banking business, and is a citizen of the State of Virginia.

8.  That at all times hereinafter mentioned and relevant herein, the Defendant has been and remains a corporation organized and existing under the laws of the State of Wyoming with an office for business in the State of Wyoming, City of Cheyenne, and is a citizen of the State of Wyoming.

### IV. FACTUAL ALLEGATIONS

9. That heretofore and from time to time the Defendant made material misrepresentations of fact to the Plaintiff knowing that such misrepresentations were false and upon which the Plaintiff relied and was damaged.

10.  That as a result of these material misrepresentations, the Plaintiff invested $86,000 in the Defendant and sustained damages thereby.

### AS AND FOR A FIRST CAUSE OF ACTION
### PROMISSORY NOTES DEFAULTS

11.  Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 10 of this Complaint with the same force and effect as if fully set forth at length herein.

12. The Defendant as borrower made, executed and delivered to the Plaintiff a Convertible Promissory Note dated January 23, 2017 in the amount of $53,000, and a second Note dated February 15, 2107 in the amount of $33,000 ("the Notes") which Notes were issued pursuant to Securities Purchase Agreements (the "SPAS") of even date which provide for certain issuance of and conversion rights in and to the stock of the Defendant.  The Notes were fully funded on a timely basis.

13.  That both the Notes and the Agreements provided that the venue for any action for lawsuit between the parties would be in the State of New York, County of Nassau and that the instruments would be governed by and construed in accordance with the laws of the State of Virginia.

14.  That the Notes provide in pertinent part that the Defendant must be and remain current in its filing obligations under the Exchange Act of 1933.

15.  That the Defendant has failed to file its Form 10Q (Quarterly Report) with the Securities and Exchange Commission ("SEC") that was due to be filed by June 30, 2017, covering the period ending March 31, 2017, thereby defaulting under the Notes and Agreements.

16.  That the Notes provide in pertinent part that the failure to file constitutes an event of default under Section 3.9 entitling the Plaintiff to recovery 150% of the outstanding principal amount of the Note together with accrued and unpaid interest and default interest.

17.  As a result of the Defendant's default, on September 6, 2017, the Plaintiff authorized its attorney to prepare and forward a letter advising the Defendant of its default under the Notes. A copy of that Default Letter is annexed hereto as Exhibit "A", and the contents thereof are hereby incorporated by reference.

18.  That the Defendant has caused damages to the Plaintiff in an amount not less than $129,000 together with interest and default interest as set forth therein.

### AS AND FOR A SECOND CAUSE OF ACTION
### BREACH OF CONTRACT – LOST PROFITS

19.  Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 18 of this Complaint with the same force and effect as if fully set forth at length herein.

20. The failure of the Defendant to fail to comply with the Reporting Requirements of the Exchange Act of 1933 has directly interfered with the Plaintiff's conversion rights under the Notes and SPA and prevented the Plaintiff from enjoying the benefits of its bargain and contractual rights.

21. That as a direct result of the default of the Defendant and its failure to abide by its contractual obligations, the Plaintiff has been deprived of and continues to be deprived of the opportunity to acquire and to sell the common stock of the Defendant pursuant to Rule 144 of the Exchange Act of 1933 at a profit which profits have been irretrievably lost as the markets for that common stock can no longer be recreated.

22. That by reason of the foregoing, the Plaintiff is entitled to judgment in an amount to be determined by the Court and equal to the lost profits that the Plaintiff would have realized had the stock been made available and delivered to Plaintiff in accordance with the Note and Agreements.

## AS AND FOR A THIRD CAUSE OF ACTION
## BREACH OF CONTRACT – LITIGATION EXPENSES

23. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 22 of this Complaint with the same force and effect as if fully set forth at length herein.

24. That the Notes and Agreements provide that in the event of a dispute and/or litigation between the parties, the prevailing party shall be entitled to recover all of its litigation expenses including reasonable attorneys' fees.

25. That by reason of the foregoing, the Plaintiff is entitled to judgment for the amount of its reasonable legal fees and litigation expenses paid or incurred in this action.

## AS AND FOR A FOURTH CAUSE OF ACTION
## VIOLATIONS OF SECTION 10(b) OF THE
## EXCHANGE ACT AND RULE 10(b)-5b

26.  Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 25 of this Complaint with the same force and effect as if fully set forth at length herein.

27.  That through the foregoing conduct, the Defendant knowingly and recklessly engaged in manipulative and deceptive conduct in violation of 15 U.S.C. Section 78j(b) and the Rules and Regulations promulgated thereunder, by failing to disclose and misrepresenting the true nature of their intentions as set forth above.

28.  That the Defendant further engaged in knowing manipulation and deceptive conduct by directly representing and warranting that the Defendant would honor its obligations pursuant to the Note and Agreement when in truth and in fact it had no intentions to do so.

29.  That in reliance on the foregoing misrepresentations and material omissions by the Defendant, the Plaintiff was induced to purchase the Defendant's securities and to make loans to the Defendant as aforesaid.

30.  That as a direct and proximate result of the Defendant's misconduct, the Plaintiff suffered damages in an amount no less than $129,000.

## AS AND FOR A FIFTH CAUSE OF ACTION
## INJUNCTIVE AND EQUITABLE RELIEF

31.  Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 30 of this Complaint with the same force and effect as if fully set forth at length herein.

32.  That the total amount due to the Plaintiff is $129,000 exclusive of any additional liquidated damages, consequential damages, default interest, statutory pre-judgment interest, legal fees, court costs and litigation expenses.

33.   That while the Plaintiff is clearly entitled to a money judgment, the Defendant is clearly incapable of satisfying any such judgment obtained.

34.   That in its most recent filings required under the Federal Securities Laws, the Defendant concedes that it has total assets that are exceeded by its total liabilities thus rendering it insolvent.

35.   That the Defendant also represents therein that for the reporting periods it had a net loss and has insufficient cash to meet its obligations thus rendering it insolvent.

36.   That the only viable avenue available to the Plaintiff to obtain repayment of the Note is by exercising its conversion rights and thereby obtaining unrestricted shares in the Defendant and selling those shares on the open market.

37.   That at present there is an active market for the Defendant's stock which continues to trade in significant volume.

38.   That so long as that activity continues and assuming that the Plaintiff's conversion rights are not frustrated or impeded, the Plaintiff will be able to obtain the unrestricted shares, sell them in the marketplace, and recover the outstanding principal indebtedness owed to it as well as any anticipated profits.

39.   That the market for the shares of stock in the Defendant is extremely volatile such that there can be no assurance that the current level of activity will continue to be sustained.

40.   That if, as and when such trading subsides or is curtailed, any shares obtained by the Plaintiff3 at that time will no longer be saleable, thereby preventing the Plaintiff from recovering the indebtedness due to it and leading to irreparable harm based upon such an unrecoverable judgment.

41. That time is of the essence and to prevent the Plaintiff from suffering such irreparable harm, the Plaintiff must immediately be permitted to exercise its conversion rights and the Defendants must be immediately directed to cooperate with the same and to deliver the shares of stock at issue after complying with the SEC requirements as aforesaid.

42. That because of the nature, condition and value of the stock which Plaintiff seeks to acquire, which is unique to it under the facts and circumstances presented and because the Plaintiff will suffer and sustain irreparable damage that cannot be recovered through a money judgment against the Defendant, the Plaintiff has no adequate remedy at law and is entitled to equitable relief.

43. That the Defendant itself has acknowledged that the Plaintiff will sustain irreparable harm under the facts presented in that it contractually agreed to the granting of injunctive relief directing the issuance, purchase and sale of stock in the Note and Agreement, such that the relief sought herein has already been contractually consented to.

44. That by virtue of the foregoing, the Plaintiff is entitled to and demands a judgment directing the Defendant to execute and deliver all documents necessary to complete the conversion process and to deliver the stock sought by Plaintiff to which it is contractually entitled in the form of a declaratory judgment and a mandatory injunction.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

(i)     For $129,000 on the First Cause of Action;

(ii)    For an amount of lost profits to be determined by the Court for no less than $129,000 on the Second Cause of Action;

(iii)   Awarding the Plaintiff its reasonable legal fees and cost of litigation on the Third Cause of Action;

(iv)     For $129,000 on the Fourth Cause of Action; and

(v)      For a temporary restraining order and preliminary and permanent injunction against the Defendant directing it, its agents, servants and employees to promptly take all steps necessary and proper to permit the conversion of debt to stock and to deliver the stock at issue as described above on the Fifth Cause of Action;

(vi)     Together with the costs and disbursements of this action, interest at the rate of default as set forth in the Note, pre-judgment interest as provided by statute, and such other and further relief as to the Court may seem just and proper.

Dated:  Great Neck, New York
        September 29, 2017

                                        NAIDICH WURMAN, LLP

                                        By:_____
                                           Richard S. Naidich, Esq. (RSN4102)
                                        Attorneys for Plaintiff
                                        111 Great Neck Road, Suite 214
                                        Great Neck, NY 11021
                                        (516) 498-2900
                                        Fax: (516) 466-3555

Exhibit A

**CZARNIK & ASSOCIATES**
245 Park Avenue
39th Floor
New York, New York 10167

**Stephen J. Czarnik, Esq.**
tel. (212) 961-7950
fax.(212) 658-9915
sczarnik@czarnikco.com

September 6, 2017

**VIA Email: greenejeff47@hotmail.com**

FBEC WORLDWIDE, INC.
1621 Central Ave.
Cheyenne, WY 82001
Attn: Jeffrey Greene, Chief Executive Officer

    **RE:**    **Power Up Lending Group Ltd. – Convertible Promissory Note**

Mr. Greene:

As you are aware, I am special counsel to Power Up Lending Group Ltd. ("PowerUp"). Your firm, FBEC WORLDWIDE, INC. (the "Company"), is the maker of two (2) Convertible Promissory Notes, dated, respectively, January 23, 2017 and February 15, 2017 (collectively, the "Notes"), in favor of PowerUp wherein pursuant to the Notes, PowerUp loaned to the Company Eighty Six Thousand Dollars (86,000.00) in the aggregate. In connection with the transactions contemplated by each Note, the Company also executed other documents including but not limited a Securities Purchase Agreement, Share Reverse Letter and Officers Certificate.

I brought to your attention by way of a letter dated August 23, 2017 that the Company has failed to file its Form 10-Q for the period ending June 30, 2017 (the "Filing") and thus has failed to comply with the Securities Act of 1934, as amended.

Section 3.9 of each of the Notes provides the following as an Event of Default (as such term is defined in the Note):

> "3.9 Failure to Comply with the Exchange Act. The Borrower shall fail to comply with the reporting requirements of the Exchange Act; and/or the Borrower shall cease to be subject to the reporting requirements of the Exchange Act."

Each of the Notes further provide in Article III:

> ". . . Upon the occurrence of any Event of Default specified in Section 3.1 (solely with respect to failure to pay the principal hereof or interest thereon when due at

the Maturity Date), the Note shall become immediately due and payable and the Borrower shall pay to the Holder, in full satisfaction of its obligations hereunder, an amount equal to the Default Sum (as defined herein). UPON THE OCCURRENCE OF ANY EVENT OF DEFAULT SPECIFIED IN SECTION 3.2, THE NOTE SHALL BECOME IMMEDIATELY DUE AND PAYABLE AND THE BORROWER SHALL PAY TO THE HOLDER, IN FULL SATISFACTION OF ITS OBLIGATIONS HEREUNDER, AN AMOUNT EQUAL TO: (Y) THE DEFAULT SUM (AS DEFINED HEREIN); MULTIPLIED BY (Z) TWO (2). Upon the occurrence of any Event of Default, other than Section 3.2, exercisable through the delivery of written notice to the Borrower by such Holders (the "Default Notice"), the Note shall become immediately due and payable and the Borrower shall pay to the Holder, in full satisfaction of its obligations hereunder, an amount equal to the greater of (i) 150% times the sum of (w) the then outstanding principal amount of this Note plus (x) accrued and unpaid interest on the unpaid principal amount of this Note to the date of payment (the "Mandatory Prepayment Date") plus (y) Default Interest, if any, on the amounts referred to in clauses (w) and/or (x) plus (z) any amounts owed to the Holder pursuant to Sections 1.3 and 1.4(g) hereof (the then outstanding principal amount of this Note to the date of payment plus the amounts referred to in clauses (x), (y) and (z) shall collectively be known as the "Default Sum") or (ii) the "parity value" of the Default Sum to be prepaid, where parity value means (a) the highest number of shares of Common Stock issuable upon conversion of or otherwise pursuant to such Default Sum in accordance with Article I, treating the Trading Day immediately preceding the Mandatory Prepayment Date as the "Conversion Date" for purposes of determining the lowest applicable Conversion Price, unless the Default Event arises as a result of a breach in respect of a specific Conversion Date in which case such Conversion Date shall be the Conversion Date), multiplied by (b) the highest Closing Price for the Common Stock during the period beginning on the date of first occurrence of the Event of Default and ending one day prior to the Mandatory Prepayment Date (the "Default Amount") and all other amounts payable hereunder shall immediately become due and payable, all without demand, presentment or notice, all of which hereby are expressly waived, together with all costs, including, without limitation, legal fees and expenses, of collection, and the Holder shall be entitled to exercise all other rights and remedies available at law or in equity.

If the Borrower fails to pay the Default Amount within one (1) business days of written notice that such amount is due and payable, then the Holder shall have the right at any time, so long and to the extent that there are sufficient authorized shares, to require the Borrower, upon written notice, to convert the Default Amount into shares of Common Stock of the Borrower pursuant to Section 1.1 hereof."

Based upon the foregoing, the Company is now in default under each of the Notes. Demand is hereby made for the immediate payment (as provided in each of the Notes) of a sum representing 150% of the remaining outstanding principal balances (in the aggregate, 86,000.00 * 1.5 = 129,000.00), together with Default Interest as provided for in the Notes.

*FBEC WORLDWIDE, INC.*
*September 6, 2017*
*Page 3 of 2*


We look forward to your immediate response. Your failure to comply with the demand of this letter will result in PowerUp, exercising all of its rights and remedies available to it at law or in equity.


Regards,


cc:     Mr. Curt Kramer
        Chief Executive Officer
        Power Up Lending Group Ltd.

        Mr. Seth Kramer
        President
        Power Up Lending Group Ltd.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK                   Civil Action No.: _____

POWER UP LENDING GROUP, LTD.,

                          Plaintiff,

          -against-

FBEC WORLDWIDE, INC.,

                          Defendant.

                    **SUMMONS AND COMPLAINT**

                    **NAIDICH WURMAN LLP**
                    **ATTORNEYS FOR PLAINTIFF**
          **111 GREAT NECK ROAD - SUITE 214**
               **GREAT NECK, NEW YORK 11021**
                         **(516) 498-2900**

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of
New York State, certifies that, upon information and belief and reasonable inquiry, the contentions
contained in the annexed document are not frivolous.

DATED:  September 29, 2017          Signature: _____
                                    Print: Richard S. Naidich, Esq.

Service of a copy of the within                    is hereby admitted.
Dated:                                             _____
                                                   Attorney(s) for _____

PLEASE TAKE NOTICE

_____
NOTICE          that the within is a (certified) true copy of an Order entered
OF ENTRY        in the office of the clerk of the within named Court on _____, 20_____.

_____
NOTICE OF       that an Order of which the within is a true copy will be presented for
SETTLEMENT      settlement to the Hon. _____, one of the judges of
                within named Court, at _____ on _____, 20_____ at
                a.m.

DATED: Great Neck, New York
        September 29, 2017           NAIDICH WURMAN LLP
                                     Attorneys for Plaintiff
                                     111 Great Neck Road - Suite 214
                                     Great Neck, New York 11021
                                     (516) 498-2900